IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

---

| | |
|---|---|
| UNITRIN AUTO & HOME INSURANCE COMPANY as subrogee of Shamsher Shamsher | Civil Action No.: 1:11-cv-00118-RDB |
| Plaintiff, | |
| v. | |
| K. HOVNANIAN HOMES OF MARYLAND, L.L.C., et al. | |
| Defendants. | |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY FOR**

**I.     Introductory Statement**

This case involves one of many residential fires arising from the catastrophic failure of TracPipe corrugated stainless steel tubing ("CSST") manufactured by defendant OmegaFlex. TracPipe is utilized in homes to transport natural gas from the meter outside of the home to the various gas fed appliances within the home. The first case in the United States to go to trial involved the home of Terrence and Judith Tincher, located at 570 Gramercy Lane in Downingtown, Pennsylvania. Following a lengthy trial, which took place in Chester County, Pennsylvania, the Tincher jury found that the TracPipe CSST manufactured by defendant OmegaFlex is defective and rendered their verdict on October 20, 2010.

The Plaintiff's insured's property also utilized TracPipe CSST manufactured by defendant OmegaFlex to transport natural gas within the home. While the street address of the fire has changed, the failure mode of the TracPipe in both cases is virtually identical. In both instances, the TracPipe supplying fuel to the home perforated as a result of its inability to withstand the foreseeable energy produced from lightning. The result in both the Tincher case and this case involved the complete destruction of the properties and their contents.

This Motion seeks to streamline the litigation process through application of collateral estoppel and eliminate the need for a jury to make a second determination that TracPipe CSST is defective.

**II.     Statement of Material Facts**

A.     The Shamsher Fire

Plaintiff's insured, Shamsher Shamsher, is the owner of real and personal property located at 13311 L'Enfant Drive, Waterford Cove Development, Fort Washington, Maryland ("the Shamsher Property"). (See Affidavit of Shamsher, ¶ 1, attached as Exhibit "A") The home was constructed in 2006 and equipped with CSST manufactured by Defendant Omegaflex, under the brand name TracPipe, which was utilized to transport natural gas to appliances within the home. (Id. at ¶¶ 2-3).

On July 23, 2009, a thunderstorm moved through the Fort Washington area, accompanied by rain and lightning. (Id. at ¶ 6.) A fire occurred at the Shamsher home during this lightning storm. (Id. at ¶ 7) In the aftermath of the fire, the TracPipe CSST was found to have perforations in the stainless steel, which allowed an uncontrolled flow of natural gas to escape and become ignited by the heat of the arc produced by lightning energy. (Id. at ¶ 8.) The property was severely damages from heat, smoke, and water as a result of the fire. (Id. at ¶ 9).

B.     The Tincher Fire

Terrence and Judith Tincher are the owners of residential property located at 570 Gramercy Lane, Downingtown, Pennsylvania. (the "Tincher Property") (Verified Amended Complaint, ¶ 1, attached as Exhibit "B"). The Tincher Property was constructed in 1999 and was equipped with CSST manufactured by defendant Omegaflex under the brand name TracPipe that was utilized to transport natural gas to appliances within the home. (Id. at ¶¶ 10-11).

On June 20, 2007, a thunderstorm moved through the Chester County area, accompanied by rain and lightning. (Id. at ¶ 10). During the storm, a lightning discharge struck at or near the

Tincher Property. (Id. at ¶¶ 10 – 12). Electricity from the lightning strike energized the CSST in the Tincher Property which breached the CSST gas line and allowed natural gas to escape and become ignited by the heat of the arc. (Id. at ¶¶ 12 - 13). The Tincher Property was severely damaged from heat, smoke and water as a result of the fire. (Id. at ¶ 13).

C.  The Tincher Trial and Verdict

As the result of the Tincher fire, a suit was filed in the Chester County Court of County Pleas, under Civil Case No.: 08-00974. (Id.). Following a six day trial that commenced on October 11, 2010, a jury of twelve found that defendant Omegaflex's TracPipe product is defective. (Verdict Sheet, attached as Exhibit "C"). This verdict was rendered on October 20, 2010. (Id.).

The presiding judge in the Tincher trial was the Honorable Ronald C. Nagle, S.J. (Trial Court Opinion, attached as Exhibit "D.") The parties to the Tincher litigation were plaintiffs, Terrence and Judith Tincher, and defendant Omegaflex. As set forth in Judge Nagle's Opinion:

> The predominant issue in the case was whether the corrugated stainless steel tubing, manufactured and sold by Appellant under the brand name "TracPipe", was defective because of its inferior wall thickness (equal to the thickness of 4 sheets of paper), rendering it incapable of withstanding perforation by an electrical arc produced by lightning.

[Id., Pg. 2, ¶ 2 to Pg. 3, ¶ 1.]

D.  Discovery in the Tincher Case

During the course of discovery in Tincher, Steven Treichel was produced as a Corporate Designee on behalf of defendant Omegaflex. (Treichel Transcript, 6:19-7:2, attached as Exhibit "E"). At his deposition, Mr. Treichel was questioned regarding the wall thickness of TracPipe manufactured by Omegaflex. The following exchange took place:

> [Q]:  [By Mr. Utke]: Between the period of 1998, which is when the TracPipe was installed at the Tincher home, and the date of the fire, which was June 20, 2007, do you know if there was any

3

> change in the wall thickness for the product, the number referring to the 3/8, the one inch size?
>
> [A]:   [By Mr. Treichel]: No, there was not.
>
> [Q]:   Has it always been manufactured with the same wall thickness?
>
> [A]:   Yes.
>
> [Q]:   Has there ever been a consideration made by Omegaflex to increase the wall thickness?
>
> [A]:   No

[Exhibit "E", 19:17-20:6.]

Defendant Omegaflex also produced Arthur Weirauch, its former Director of Codes and Standards, as a Corporate Designee. Mr. Weirauch was deposed on November 30, 2009 and questioned regarding any changes made to TracPipe between the time period of 1999 through November of 2009. The following exchange took place:

> [Q.] (by Mr. Utke):   Is the TracPipe that is sold today the same as the TracPipe that was sold back in 1999 in terms of the technical specifications?
>
> [A.] (by Mr. Weirauch): Identically, yes.

[Weirauch Transcript, 4:15-5:8 and 38:2-5, attached as Exhibit "F"]

In other words, the TracPipe CSST in the <u>Tincher</u> case is identical to the TracPipe CSST used in the Shamsher home. As the <u>Tincher</u> jury has previously determined that TracPipe manufactured by defendant Omegaflex is defective, principles of collateral estoppel dictate that the Shamsher jury should not be tasked with the same determination.

### III.  <u>Legal Argument</u>

    A.  <u>Summary Judgment is Appropriate in this Case as No Genuine Issue of Fact Exists Regarding the Defective TracPipe Product.</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as any material fact and that the moving

4

party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A fact is material for purposes of summary judgment, if when applied to the substantive law, it effects the outcome of the litigation. Id. at 248. A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. Anderson, 477 U.S. at 248-249, 106 S.Ct. 2505.

In this case, a prior jury has already considered the issue of whether TracPipe CSST is defective. There is no dispute that the Tincher verdict involved the identical TracPipe product that is at issue in this case. Application of collateral estoppel is appropriate under these circumstances to promote judicial economy and avoid the relitigation of issues previously decided. For the following reasons, entry of summary judgment on the liability aspect of plaintiffs' product liability claims is appropriate.

    B.    **As the Tincher Jury Determined that TracPipe is a Defective Product, Collateral Estoppel Precludes Relitigation of this Issue.**

At the time of trial, the Shamsher jury will be tasked with making a determination as to whether the defendant's TracPipe product is defective. The identical issue was previously litigated in the Tincher case, and a finding and verdict was rendered by a jury on October 20, 2010. For the following reasons, principles of collateral estoppel should preclude the Shamsher jury from relitigating the same issue previously decided by the Tincher jury.

        1.    Pennsylvania Rules Will Apply In Determining The Tincher Verdict's Preclusive Effect

Maryland will rely upon to Pennsylvania law when implementing principles of collateral estoppel. The intersection of the U.S. Constitution's Full Faith & Credit clause and issue preclusion/collateral estoppel was discussed at length by the Court of Appeals of Maryland in Rourke v. Amchem Prod., Inc., 863 A.2d 926, 934-940 (Md. 2004). In Rourke, the Court determined that it should follow the preclusion rules of Virginia, the State that issued the prior judgment. Id. at 939-40 (citing Jessica G. v. Hector M., 653 A.2d 922, 930 (Md. 1995)). The

5

Court stated, "[I]n determining the preclusive effect to be given to the judgment of a State court, the claim and issue preclusion rules of the State that rendered the judgment must govern." Id. at 935. As it applies to this case, because a Pennsylvania State court issued the Tincher decision, Maryland courts must apply Pennsylvania preclusion law in determining the preclusive effect of the decision.

        2.        Under Pennsylvania Law, Collateral Estoppel Precludes Relitigation On Issues Involving TracPipe's Defectiveness

The doctrine of collateral estoppel is designed to prevent the relitigation of issues that have been properly litigated and decided in a prior court proceeding. "It operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit." See Day v. Volkswagenwerk Aktiengesellschaft, 464 A.2d 1313, 1318 (Pa. Super. Ct. 1983); See also Barness Land Development Co., LLC v. Bd. of Sup'rs of Washington Tp., 852 A.2d 463, 467 (Pa. Cmwlth. Ct. 2004) (collateral estoppel prevents re-litigation in a subsequent proceeding of an issue of law or fact that has been determined, where the legal or factual issues are identical, they were actually litigated, they were essential to the judgment and they were material to the adjudication). "Collateral estoppel may be used as either 'a sword or a shield' by a stranger to the [prior] action, as long as the party against whom the defense is invoked is the same." Id.

Collateral estoppel is broader than *res judicata* and "...[o]perates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit." Capobianchi v. BIC Corp., 666 A.2d 344, 348 (Pa. Super. Ct. 1995) (citation omitted); Barnes v. Buck, 346 A.2d 778 (Pa. 1975) (the rule of collateral estoppel provides that 'resolution of an issue in a valid, final judgment is conclusive in a subsequent action upon another claim between the same parties').

The doctrine of collateral estoppel applies when the following four prongs are met:

6

1.  An issue decided in a prior action is identical to one presented in a later action;

2.  The prior action resulted in a final judgment on the merits;

3.  The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action, and;

4.  The party against whom the collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

See Rue v. K-Mart Corp., 713 A.2d 82, 84 (Pa. 1998).

Most Pennsylvania courts also read a fifth factor into the analysis, namely, "that...[t]he determination in the prior proceeding was essential to the judgment." See e.g., Bordlemay v. Keystone Health Plans, Inc., 789 A.2d 748, 751 (Pa. Super. 2001) (citing Pittsburgh v. Zoning Bd. Of Adjustment, 559 Pa. 896, 901 (Pa. 1989)); Green v. Green, 783 A.2d 788, 791 (Pa. Super. Ct. 2001) (citing Yamulla Trucking & Excavating Co. v. Justofin, 771 A.2d 782, 786 (Pa. Super. Ct. 2001)). See, 1 P.L.E. Judgment § 223 (collateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; (4) the party or a person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in a prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment).

Review of the five-pronged test for application of collateral estoppel to the facts of this case dictate that a jury is not required to determine whether the Shamsher TracPipe is defective, as this issue was litigated and decided by the Tincher jury. Under the first prong, the issue decided by the Tincher jury was identical to the one presented in the Shamsher action, in that it requires a determination as to whether TracPipe is defective. The TracPipe in both cases is identical and was utilized to transport gas within the respective homes. In fact, the only difference between the Tincher and Shamsher cases is the physical address where each loss took place. As set forth in the testimony of defendant Omegaflex's Corporate Designee, there has

7

never been any change in the wall thickness for this product, nor has there ever been any consideration given to increase the wall thickness. (Exhibit "D," 19:17-20:6). In other words, the TracPipe installed at the Tincher home in 1998 is physically identical to the TracPipe installed in the Shamsher home in 2006.

Secondly, there can be no question that the Tincher matter resulted in a final judgment on the merits. Following a six (6) day trial which entailed the production of multiple fact and expert witnesses on behalf of both parties, the jury rendered its verdict, which included a finding that the TracPipe product is defective. During the course of jury deliberations, evidence was reviewed and several requests were made for testimony to be read back to the jury. Without question, the Tincher verdict was based on the merits of plaintiffs' claims.

The third prong requires defendant Omegaflex to be a party to both actions. There can be no question that Omegaflex was the only defendant in the Tincher matter at the time of trial and the verdict in that case was against defendant Omegaflex. Defendant Omegaflex is also the sole defendant in the Shamsher matter. The third prong is satisfied, as defendant Omegaflex is the same defendant in both actions.

The fourth prong requires that defendant Omegaflex had a full and fair opportunity to litigate the issue in the prior action. It should be noted that the trial in the Tincher matter lasted six (6) days. Prior to trial, numerous depositions were taken and defendant Omegaflex filed <u>numerous</u> summary judgment motions, which required briefing and consideration by the Court. Defendant Omegaflex also filed numerous motions *in limine* prior to jury selection and, following the adverse jury verdict, filed motions for post-trial relief. There can be no question that defendant Omegaflex had a fair opportunity to fully litigate whether its product is defective, to both the Court as well as the jury. Application of collateral estoppel will also eliminate the need to relitigate the repetitious motions filed by the defendant on these product liability claims.

The last prong of the collateral estoppel test requires that the determination in the prior proceeding be essential to the judgment. The primary issue litigated in the <u>Tincher</u> case involved the question as to whether the TracPipe product is defective and the jury was tasked with making a specific determination as to whether TracPipe is defective. (<u>See</u>, Verdict Form, Exhibit "C"). The jury finding that the TracPipe product is defective was essential to the judgment, as it formulated the sole basis for recovery on behalf of the <u>Tincher</u> plaintiffs for their product liability claim.

Collateral estoppel is appropriate in this case, as it will streamline the litigation process and promote judicial economy. There is no need for a second jury to deliberate on whether TracPipe is defective, as the <u>Tincher</u> jury definitively found that TracPipe is defective.

### C. Additional Considerations for Application of Offensive Collateral Estoppel are Satisfied Under the Circumstances of this Case.

In addition to the factors enumerated above, when a plaintiff seeks to employ the collateral estoppel doctrine offensively, Pennsylvania courts require that consideration be given to the following factors:

1. The plaintiff has had an opportunity to join the earlier action;
2. The defendant had an incentive to defend the first action vigorously;
3. The judgment relied upon as a basis for collateral estoppel is inconsistent with one or more previous judgments in favor of the defendant; and
4. The second action would afford the defendant procedural opportunities unavailable in the first action that could produce a different result.

1 P.L.E. Judgment § 233 (citing <u>Precision Door Co. v. Meridian Mut. Ins. Co.</u>, 353 F. Supp. 2d 543 (E.D. Pa. 2005).

As applied in this case, all of the factors favor application of the doctrine of collateral estoppel to the Shamsher case. First, the Shamsher fire occurred over two years after the Tincher

fire. As discovery was complete in the Tincher case prior to the Shamsher fire even occurring, there was no opportunity to join the Tincher matter.

Secondly, defendant Omegaflex had every incentive to defend the Tincher matter vigorously. It should be noted that Tincher was the first trial in the United States involving a determination as to whether TracPipe CSST is defective. Counsel filed numerous motions for summary judgment and had every incentive to defend its product, as testimony revealed that over 750 million feet of TracPipe is currently installed in homes across the United States. Defendant Omegaflex not only had every financial incentive to vigorously defend its product, but it did vigorously defend its product.

The third factor requires a determination as to whether application of collateral estoppel would be inconsistent with previous judgments in favor of the defendant. As the Tincher case remains the only verdict in the United States involving CSST, there is no basis for an argument that application of collateral estoppel would be inconsistent with other decisions. In this same regard, application of collateral estoppel promotes consistency between the Tincher verdict and other decisions regarding the defective nature of TracPipe CSST.

Finally, the last prong requires consideration of procedural opportunities that were not available in the first action that could produce a different result. There could not be a case more similar to the Tincher matter than the Shamsher case. One would be hard pressed to argue that every procedural opportunity, from the filing of Preliminary Objections through Post Trial Motions for Relief, were exhausted in the Tincher litigation. There has been no change to substantive or procedural law in Pennsylvania since the Tincher verdict was rendered. There is no basis for any contention that a different result would be rendered based on procedural opportunities available.

D. The Pending Appeal in *Tincher* has no Bearing on the Application of Collateral Estoppel

It is anticipated that defendant Omegaflex will attempt to argue that the Tincher verdict is not considered a final judgment, due to the pending appeal.[1] However, numerous Pennsylvania courts have considered and rejected this argument. See, e.g., Green v. Green, 783 A.2d 788 (Pa. Super. Ct. 2001) (a judgment is deemed final for purposes of *res judicata* or collateral estoppel unless or until it is reversed on appeal). Under Pennsylvania law, a judgment is final even though an appeal has been taken. See Commercial Union Assurance Co. v. Pucci, 523 F. Supp. 1310, 1318 (W.D. Pa. 1981) (citing Wallace's Estate, 174 A. 397, 399 (Pa. 1934)); Bassett v. Civil Serv. Comm'n of Philadelphia, 514 A.2d 984 (Pa. Commw. Ct. 1986); cf. Helmig v. Rockwell Mfg. Co., 131 A.2d 622 (Pa. 1957) (motion for new trial does not affect finality and conclusiveness of original judgments).

As applied in this case, while the Tincher case is currently pending appellate review, the jury verdict reached in that matter is considered final under Pennsylvania law. There is no need to relitigate whether the TracPipe product is defective, as the Tincher jury has considered this issue and rendered a conclusive verdict. Application of collateral estoppel is correct under these circumstances.

---

[1] See Notice of Appeal, attached as Exhibit "G."

## IV. CONCLUSION

For the aforementioned reasons, Plaintiff's Motion for Partial Summary Judgment on Liability as it relates to Count III of Plaintiff's Complaint regarding product liability claims against Defendant Omegaflex should be granted. While issues of the cause of the fire and extent of damages require litigation and determination, judgment should be entered that the product is defective.

Dated: November 29, 2011

        COZEN O'CONNOR

        By: /s/ Mark E. Utke
        Mark E. Utke, Esquire
        1900 Market Street
        Philadelphia, PA 19103
        215-665-2164

        -and-

        Richard L. Flax, Esquire (#01189)
        Law Offices of Richard L. Flax, LLC
        29 West Susquehanna Avenue
        Suite 500
        Baltimore, MD 21204

        *Attorneys for Plaintiff*