IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITRIN AUTO & HOME INSURANCE COMPANY, as subrogee of Shamsher Shamsher | : : : |
| Plaintiff, | : : |
| v. | : : : |
| K. HOVNANIAN HOMES OF MARYLAND, LLC, f/k/a Washington Homes of MD I LLC, et al., | : : : : |
| Defendants. | : : |

Case No.: 1:11-cv-00118-RDB

**JURY TRIAL DEMANDED**

_____

**DEFENDANT OMEGA FLEX, INC.'S OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant Omega Flex, Inc., (hereinafter "Omega Flex") through its undersigned counsel, hereby submits this Opposition to Plaintiff's Motion for Summary Judgment and states as follows:

Plaintiff asks this Court to apply offensive collateral estoppel against Omega Flex to preclude it from defending the strict liability design defect allegations asserted against it in this matter. The basis for the requested estoppel is a less than unanimous Pennsylvania state court jury verdict in the case of Tincher v. Omega Flex, No. 2008-00974-CA (Pa. Ct. of Com. Pleas of Chester County Oct. 20, 2010), where the jury found a design defect under Pennsylvania strict liability law, but also found that the product was not negligently designed.[1] The Tincher matter

---

[1] On December 14, 2011, the United States District Court for the District of Connecticut, faced with a plaintiff's attempt to apply collateral estoppel based upon the Tincher v. Omega Flex verdict—similar to the motion currently before this Court—denied the plaintiff's motion for partial summary judgment. (See Order, Nationwide Mutual Fire Insurance Company v. Omega Flex, Inc., No. 3:10-cv-01596-SRU (D. Conn. Dec. 14, 2011), attached hereto as **Ex. A**. Omega Flex will supplement the record with the transcript of that court's hearing and decision).

is currently on appeal in the Superior Court of Pennsylvania.

Omega Flex requests this Court to deny Plaintiff's requested relief because: (1) Maryland product liability law is different than the design defect test that a Pennsylvania jury would apply; (2) Plaintiff cannot point to a single case around the country in which a court has precluded a manufacturer from defending a design defect case after a single prior unsuccessful trial; (3) the products in <u>Tincher</u> and <u>Shamsher</u> are different because they were accompanied by different instructions and warnings; and (4) while discovery is nowhere near complete, certain factual differences clearly exist between this case and the <u>Tincher</u> case, in that the cases arise from different events at different locations and therefore Plaintiff cannot sustain its burden of proving that the issues to be determined in this case are identical to the issues determined in the <u>Tincher</u> case.  Accordingly, Plaintiff's motion should be denied.

## **MATERIAL FACTS IN DISPUTE**

Plaintiff's statement of material facts characterizes certain assertions as "undisputed facts," despite the fact that this litigation is still in the early stages of discovery and investigation. Accordingly, as a preliminary matter, Omega Flex is not presently in a position to evaluate the veracity of Plaintiff's "undisputed" assertions as to the nature of the Shamsher fire.  As will be explained below, however, the basic facts as alleged in the Shamsher Complaint reveal key differences between the facts of the two cases.

As to the facts Plaintiff alleges regarding the <u>Tincher</u> case, Omega Flex points this Court to the jury verdict itself, in which the <u>Tincher</u> jury's determination that the product was "defective" (under Pennsylvania strict liability law) was not unanimous. (<u>See</u> Trial Transcript of Jury Verdict, Oct. 20, 2011, <u>Tincher v. Omega Flex</u>, at 835, Ex. B).  The <u>Tincher</u> jury also found

---

Notably, Plaintiff's counsel in the <u>Nationwide Mutual</u> case, Cozen O'Connor, also serves as counsel of record in this case and acted as counsel for the plaintiff in the <u>Tincher</u> case.

that Omega Flex was not negligent.  (See Ex. B, at 830-81).

# HISTORY OF THE CASE

## I. PROCEDURAL HISTORY

Plaintiff filed its Complaint on January 14, 2011, alleging that on July 23, 2009, lightning struck in the vicinity of the Shamsher home at 13311 L'Enfant Drive, Waterford Cove Development, Fort Washington, Maryland, causing gas leakage and fire. (See Plaintiff's Complaint, Ex. C).  Plaintiff alleges causes of action against K. Hovnanian Homes of Maryland, L.L.C., the manufacturer of the home; Guardian Plumbing Services, Inc., the supplier of the fuel gas and installer of fuel gas equipment; C&R Electric, Inc., the electrical contractor; and Omega Flex, Inc., the manufacturer of corrugated stainless steel tubing ("CSST") used to carry fuel gas within the home.  (See Ex. C).

Plaintiff admits that "[t]he CSST in the [Shamsher home] was not properly bonded to the home's grounding systems at the time of the fire." (Ex. C, at ¶ 20).   The "bonding" was the responsibility of one or more of the non-Omega Flex defendants.  Significantly, Plaintiff admits that "[h]ad the CSST been properly bonded, the fire . . . would not have occurred and/or would not have been fed and fueled by the flow of fuel gas . . . ."  (Ex. C, at ¶ 20).

As for the product defect claims against Omega Flex, Plaintiff claims that Omega Flex "designed, supplied, and/or distributed the CSST into the stream of commerce in a dangerous[s] and defective condition and without proper and adequate warnings, including post-sale warnings, and instructions as to its safe use and installation."  (Ex. C, at ¶ 30).  Plaintiff contends that "[p]rior to the construction of the [Shamsher home] … Omega [Flex] became aware that CSST was prone to become damaged and/or perforated during electrical storms unless the CSST systems in a residence were properly bonded to the residence's electrical grounding systems."

(See Ex. C, at ¶ 17).

The parties are currently engaging in the discovery phase of the case and have not yet started taking depositions. No expert reports have been exchanged.

## II. THE MATERIAL DIFFERENCES BETWEEN THE SHAMSHER CLAIM AND THE TINCHER CLAIM

The Tincher Plaintiff (USAA Casualty and Surety Co.) made a very specific allegation in that case: that the fire in the Tincher home resulted from: (1) an indirect lightning strike that caused an electrical arc from or to a section of TracPipe tubing leading to the fireplace; (2) in a **properly bonded** TracPipe system; and (3) that electrical arc perforated the TracPipe tubing through heat diffusion and ignited the escaping natural gas. (See Plaintiff's Mem. of Law in Opp. to Def't. Omega Flex's MSJ on Failure to Warn, at 2, Ex. D). At trial, the Tincher Plaintiff submitted both negligence and strict liability claims to the jury on the issue of product design, and the jury was charged under Pennsylvania product liability law.

Unlike the Tincher matter, which is currently on appeal in the Superior Court of Pennsylvania, the Shamsher litigation is in its early stages of investigation and discovery. The specific circumstances and causes of the Shamsher fire still need to be developed in depositions, investigations, and the exchange of expert reports. However, certain material differences between the Tincher and Shamsher cases are known. For instance, unlike the Tincher Plaintiff, the Shamsher Plaintiff admits that the Omega Flex TracPipe system was not bonded in accordance with the applicable Omega Flex Design and Installation Guide. Further, unlike the Tincher residence, the Shamsher residence was built at a time when the Omega Flex Design and Installation Guide—which the TracPipe installer was required to follow—was different than the Guide available earlier to the installer of the Tincher home's TracPipe system.

More specifically, the Tincher home was built in the 1998-99 time frame. The relevant TracPipe product at issue included the 1998 Design and Installation Guide (D & I Guide). The 1998 D & I Guide referenced the applicable codes for installation of the TracPipe, but did not explicitly call out the bonding instructions. (See 1998 D & I Guide, Ex. E). The Shamsher residence, however, was built and permitted in 2006. The December 2005 Design Guide and Installation Instructions ("D&I Guide") issued by Omega Flex applied to this construction. The December 2005 D&I Guide specifically required that the CSST system be electrically bonded and grounded through a dedicated bonding wire. (See December 2005 D&I Guide, Ex. F).

Furthermore, the December 2005 D&I Guide stated that the CSST installation must comply with the National Fuel Gas Code NFPA 54/ANSI Z223 requirement that "each above ground portion of a gas piping system upstream from the equipment shutoff valve shall be electrically continuous and bonded to any grounding electrode, as defined by the National Electrical Code, ANSI/NFPA 70 1999 Edition." (Ex. F, at 60). In addition, Omega Flex's D&I Guide provided detailed bonding instructions complete with an illustration for the CSST installers. (Id.) For bonding of the TracPipe system, the D&I Guide required a bonding clamp be attached to the brass AutoFlare fitting adapter or to a black pipe component connected to an AutoFlare fitting. (Id.) Despite the detailed manufacturer's instructions, the CSST gas piping system within the Shamsher home was not properly bonded.

## LEGAL ARGUMENT

I. **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." FED. R. CIV. P. 56(c).  The purpose of summary judgment "is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted).

An issue of material fact is genuine if the evidence is such that a reasonable jury can return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Under Rule 56, "[t]he moving party bears the burden of showing the absence of any genuine issues of material fact." Mathews v. Lancaster Gen. Hosp., 87 F.3d 624, 639 (3d Cir. 1996).  Once the movant satisfies that burden, only then does the burden shift to the non-moving party, who, "by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  Only if the non-moving party fails to sustain that burden is summary judgment appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

In assessing whether a genuine issue of material fact exists, a court must review the record "in the light most favorable to the non-moving party." Omnipoint Communications Enters. v. Newtown Township, 219 F.3d 240, 243 (3d Cir. 2000).

Collateral estoppel or issue preclusion "operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit." Day v. Volkswagenwerk Aktiengesellschaft, 464 A.2d 1313, 1318 (Pa. Super. 1983).  A court may in its discretion grant application of collateral estoppel in a pending case only if the party seeking to apply collateral estoppel establishes all of the following factors:  (1) the issue decided in the prior action was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against

whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the plea is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.  Id.

In this case, Plaintiff seeks offensive collateral estoppel, as they are attempting to use it to preclude Omega Flex from defending its product against Plaintiff's claims.  A court has broad discretion in determining whether to apply offensive collateral estoppel.  See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331, 99 S.Ct. 645, 652 (1979).  In applying that discretion, a court must also consider whether: (1) plaintiff had an opportunity to join the earlier action; (2) the defendant had an incentive to defend the first action vigorously; (3) the judgment relied upon as a basis for collateral estoppel is inconsistent with one or more previous judgments in favor of the defendant; and (4) the second action would afford the defendant procedural opportunities unavailable in the first action that could produce a different result.  See Toy v. Metropolitan Life Ins. Co., 863 A.2d 1, 15 (Pa. Super. 2004).  Moreover, the Supreme Court has cautioned that "where…the application of offensive collateral estoppel would be unfair to a defendant, a trial judge should not allow the use of collateral estoppel."  Parklane Hosiery, 439 U.S. at 331, 99 S.Ct. at 652.

When applying the collateral estoppel factors, it is clear that collateral estoppel is not appropriate in this case, because: (1) Maryland product liability law is different than the design defect test that a Pennsylvania jury would apply; (2) offensive collateral estoppel is not appropriate, and has never been applied, against a manufacturer in a design defect case after a single prior adverse case;[2] (3) discovery is nowhere near complete, no depositions have been

---

[2]   Moreover, separate and apart from the issue of whether a final judgment exists, the pending appeal in the Tincher case raises several practical issues.  Omega Flex contends the Tincher verdict was the product of the trial court's misapplication and improper extension of

7

taken, and expert reports have not been exchanged; and (4) Omega Flex has new evidence it did not have at the Tincher trial, and it would be denied a full and fair opportunity to defend itself.

## II. THE DESIGN DEFECT TEST CONSIDERED BY THE TINCHER JURY IN PENNSYLVANIA IS DISTINCTLY DIFFERENT FROM THE TEST APPLIED IN MARYLAND

The Court should reject Plaintiff's attempt to turn a single decision in one state court action into a global indictment of Omega Flex's product—particularly where, as here, Pennsylvania and Maryland employ widely different tests to determine whether a product's design is defective. While both states employ the definition of design defect set forth in the Restatement (Second) of Torts § 204A, see Webb v. Zern, 220 A.2d 853 (Pa. 1966), Phipps v. General Motors Corp., 278 Md. 337, 363 A.2d 955 (1976), any similarity between the law of the two states ends there. A look at the jury instructions and controlling case law of both states on the question of design defect establishes that the application and interpretation of Section 402A are completely different between Maryland and Pennsylvania.

Pennsylvania law requires a jury to decide whether a product, as manufactured, was "safe for its **intended** use"—removing from the jury's consideration all concepts of "reasonableness" and "foreseeability."[3] See, e.g., Pa. Dept of Gen. Servs. v. U.S. Mineral Prods. Co., 898 A.2d 590, 601 (Pa. 2006); Phillips v. Cricket Lighters, 841 A.2d 1000, 1017 (Pa. 2003) (J. Saylor, concurring); Azzarello v. Black Bros., 391 A.2d 210 (Pa. 1978). Accordingly, a Pennsylvania jury instructed in accordance with § 402A will never hear the term "unreasonably dangerous" or

---

Pennsylvania product liability law. Not only would offensive use of the Tincher verdict compound the errors and injustice Omega Flex has raised in that appeal, but a reversal of the Tincher verdict will require relitigation of the issues in this case and, thus, an immense waste of judicial resources.

[3]  Indeed, the proper application of Pennsylvania's "intended use" requirement is a central aspect of the pending appeal in the Tincher case and yet another reason why any attempt to apply offensive collateral estoppel in this case is problematic.

conduct a risk-utility analysis—rather, the Court itself undertakes a risk-utility analysis to make the threshold determination of whether, as a matter of social policy, a product can be deemed "unreasonably dangerous" before the issue of product defect ever reaches the jury. See, e.g., Azzarello, 391 A.2d 210; Foley v. Clark Equip. Co., 523 A.2d 379, 382 (Pa. Super. 1987) (under Azzarello, the court must determine the question of "unreasonably dangerous" as a matter of social policy prior to any jury determination of defect).

In contrast, Maryland juries are instructed in accordance with one of two formulations under § 402A: either a "consumer expectation" test or a risk-utility test. Lloyd v. General Motors Corp., 275 F.R.D. 224, 228 (D. Md. 2011) ("Lloyd II"). The consumer expectation test expressly requires the jury to answer the question of whether the product is "unreasonably dangerous" to the ultimate consumer, as an element of a product defect claim. Halliday v. Sturm, Ruger & Co., 368 Md. 186, 197, 792 A.2d 1145, 1152 (2002) ("[i]n determining whether a product is defective, in its design or manufacture, Maryland cases have generally applied the 'consumer expectation' test" (citations omitted)). Under a risk-utility test, a Maryland jury is instructed to consider the very risk-utility factors that a Pennsylvania jury is prohibited from hearing. Lloyd v. General Motors Corp., 266 F.R.D. 98, 108 (D. Md. 2010) ("Lloyd I").[4]

Below is a side-by-side comparison on the model jury instructions given in both Maryland and Pennsylvania:

---

[4] Significantly, this Court has observed that the applicable test under Maryland law may depend, in part, on the type of product at issue, whether the product has malfunctioned, and whether the allegations include the lack of a safety device. See Lloyd II, 275 F.R.D at 228-30; citing Halliday, 368 Md. 186, Ziegler v. Kawasaki Heavy Indus., Ltd., 74 Md. App. 613, 539 A.2d 701 (1988), cert. denied 313 Md. 32, 542 A.2d 858 (1988). In this case, it is not clear from the Complaint whether Plaintiff's allegations include a claim of product malfunction, a lack of safety devices, or both. Accordingly, this Court cannot even determine which test the jury will apply until Plaintiff's defect allegations are fully developed.

| PENNSYLVANIA MODEL JURY CHARGE FOR SECTION 402A | MARYLAND MODEL JURY CHARGE FOR SECTION 402A |
|---|---|
| **DEFINITION OF DESIGN "DEFECT"**<br>The (supplier) of a product is the guarantor of its safety. The product must, therefore, be provided with **every element necessary to make it safe for (its intended) use, and without any condition that makes it unsafe for (its intended) use**. If you find that the product, at the time it left the defendant's control, lacked any element necessary to make it safe for (its intended) use or contained any condition that made it unsafe for (its intended) use, then the product was defective, and the defendant is liable for all harm caused by such defect. Pa. S.S. Civ. J.I. 8.02, citing <u>Berkebile v. Brantly Helicopter Corp.</u>, 337 A.2d 893 (Pa. 1973); <u>Azzarello v. Black Bros. Co.</u>, 391 A.2d 1020, 1026 n.12 (Pa. 1978). (emphasis added).[5] | **DEFECTIVE CONDITION – DESIGN DEFECT**<br>The plaintiff claims that the product had a design defect. The product was defectively designed if the design resulted in a product that is in a **condition not contemplated by the ultimate consumer** which condition was **unreasonably dangerous to the ultimate consumer**. MPJI-Cv 26:14, citing <u>Phipps v. Gen. Motors Corp.</u>, 278 Md. 337, 363 A.2d 955, 20 UCCRS 312 (1976); <u>Halliday v. Sturm, Ruger & Co.</u>, 368 Md. 186, 792 A.2d 1145 (2002). (emphasis added). |
| | **DEFECTIVE CONDITION – DESIGN DEFECT (ALTERNATIVE INSTRUCTION IF PRODUCT MALFUNCTIONED)**<br>If you conclude that the product malfunctioned as a result of its design, then you may consider whether the design resulted in a product whose danger outweighed its utility. In balancing the danger of the product against its utility, the following factors should be considered:<br><br>(1) the usefulness and desirability of the product;<br>(2) the availability of other and safer products to meet the same need;<br>(3) the likelihood of injury and its probable seriousness;<br>(4) the obviousness of the danger;<br>(5) common knowledge and normal public expectation of the danger (particularly for established products);<br>(6) the avoidability of injury by care in the use of the product (including the effect of instructions and warnings); and<br>(7) the ability to eliminate danger without |

---

[5]   The <u>Tincher</u> jury was instructed in accordance with this charge. Omega Flex, however, raised its objections to other aspects of the <u>Tincher</u> court's jury charge in its pending appeal.

|  | serious impairing the usefulness of the product or making it unduly expensive. MPJI-Cv 26:15, citing Halliday, 368 Md. 186, 792 A.2d 1145. |
|---|---|

Thus, Pennsylvania product liability does not, and did not in the Tincher case, permit the jury to consider whether the CSST was "unreasonably dangerous" or whether its risks outweigh its utility. See, e.g., Azzarello, 391 A.2d 210; Foley, 523 A.2d at 382. The Tincher court's instruction, while accurately capturing the intended use concept of Pennsylvania law, would have no place forming the basis of a Maryland jury's determination of design defect.[6]

As evident by the vast differences in the jury instructions and legal authority, Maryland and Pennsylvania product liability law are substantively different. A single Pennsylvania verdict, based upon Pennsylvania's design defect definition and jury instructions, can have little bearing on the question of a product's defectiveness under Maryland law.

### III. OFFENSIVE COLLATERAL ESTOPPEL SHOULD NOT BE APPLIED TO MASS-PRODUCED PRODUCTS

Significantly, Plaintiff does not point to a single case anywhere in the United States where a court has permitted offensive collateral estoppel to preclude a manufacturer from defending an allegedly defective product because an earlier jury in one trial found a design defect.[7] To the contrary, numerous courts around the country have found that "[c]ollateral estoppel should not be used to preclude relitigation of the issue of defective design relating to

---

[6] The Tincher verdict simply contains a single question regarding whether the product was "defective." Moreover, the Tincher jury's determination was reached by eleven of twelve jurors, which is sufficient in Pennsylvania state court; this federal case, however, will require a unanimous jury verdict. Accordingly, the lack of unanimity among the Tincher jury would result in a hung jury in the Shamsher case.

[7] After a reasonably diligent search, Omega Flex has been unable to find a single case in the United States applying offensive collateral estoppel to preclude a manufacturer from re-litigating the issue of a defective product.

11

mass-produced products where the injuries arise out of distinct underlying incidents." Rogers v. Ford Motor Co., 925 F.Supp. 1413, 1419 (N.D. Ind. 1996).  Accord The Charter Oak Fire Ins. Co. v. Tecumseh Products Co., 2007 WL 3102177 (D. Conn. Oct. 23, 2007); Warnick v. NMC-Wollard, Inc., 512 F.Supp.2d 318, 323-324 (W.D. Pa. 2007) (denying application of collateral estoppel because factual issues in defenses were different "because the circumstances in which those other plaintiffs' injuries occurred necessarily differ from case to case."); Goodson v. McDonough Power Equip., Inc., 443 N.E.2d 978, 987 (Ohio 1983) (stating that it is not prudent for a single jury, sitting in review of certain limited facts, to enter a verdict which would establish safety standard for a given product for the entire country).

> As one New York court explained:
>
> This Court is cognizant that a single products liability case typically involves individualized circumstances peculiar to that case alone, such as the age and health of the plaintiff, the conditions under which the product was used, or the precise circumstances surrounding plaintiff's injury. **Such factual idiosyncrasies necessarily prevent a single finding from one such case to be applied to all other cases in cookie-cutter fashion. To find otherwise could distort a jury's decision on the remaining, open questions, prejudice a defendant's ability to litigate case-specific issues, and insulate a plaintiff from the burden of having to prove his case.** This Court finds that applying offensive collateral estoppel in the instant case would subject the *Kramer* litigation to these very evils. Accordingly, this Court finds that it would be unfair to grant plaintiffs' preclusive motion in this case, and that this motion should be denied.

Kramer v. Showa Denko K.K., 929 F.Supp. 733, 750 -751 (S.D.N.Y. 1996) (emphasis added).

Commentators have also criticized the application of offensive collateral estoppel on a number of grounds, including inappropriate deference to a single jury verdict in light of variability in verdict results and the unreliability of using a single verdict to condemn an entire product line (Stier, *Another Jackpot (In)Justice: Verdict Variability and Issue Preclusion in Mass Torts,* 36 Pepp. L. Rev. 715 (April 2009), Ex. G)), and significant factual issues inherent in design defect or failure to warn claims (Madden, *Issue Preclusion in Products Liability* (1990),

Pace Law Faculty Publications, Paper 152, Ex. H).  Application of a single verdict to deem an entire product line as defective is not an appropriate means of assessing the risks and benefits to society of new technologies, especially where that new technology has been reviewed and studied by a broad cross-section of persons with training and expertise in the industry.

The cases cited by Plaintiff are inapposite to the facts of this case and the issue before this Court.  The cases cited by Plaintiff analyze the application of collateral estoppel in different litigation involving the **same cause of action**.  See Rue v. K-Mart Corp., 713 A.2d 82 (Pa. 1998) (denying application of collateral estoppel); Yamulla Trucking and Excavating Co. v. Justofino, 771 A.2d 782 (Pa. Super. 2001) (applying collateral estoppel to bar relitigation of issue of existence of vacant land when a prior final order involving both parties determined that there was no evidence of vacant land); Green v. Green, 783 A.2d 788 (Pa. Super. 2001) (applying collateral estoppel to bar wife from asserting, contrary to orphans' court's ruling, that assets of inter vivos trust were not available to husband to pay child support); Bordlemay v. Keystone Health Plans, Inc., 789 A.2d 748 (Pa. Super. 2001) (applying collateral estoppel barring plaintiffs from asserting claims of vicarious liability, corporate liability, and breach of contract against HMO after adverse judgment in its medical malpractice action against physicians); Barness Land Development Co. v. Bd. of Sup'rs of Washington Tp., 852 A.2d 463 (Pa. Cmwlth. 2004) (applying collateral estoppel barring developer from asserting that township ordinance changing zoning of land set for development from R-2 residential to A-agricultural was invalid when it was previously held to be valid); Capobianchi v. BIC Corp., 666 A.2d 344 (Pa. Super. 1995) (applying collateral estoppel to bar claim that a defective product caused the same neck injuries already attributed to a degenerative condition).

IV.  **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IS PREMATURE AND COLLATERAL ESTOPPEL IS IMPROPER BECAUSE THE ISSUES ARE NOT IDENTICAL**

   A. <u>**Discovery is Incomplete**</u>

In this case, relevant discovery is far from complete.  **No** depositions have been taken and expert reports have not been exchanged.  Because Plaintiff chose to file this motion prior to the completion of all relevant discovery, including the exchange of expert reports, its motion is premature.  Plaintiff has not even established the material facts of this case—much less shown the absence of any issue of material fact as required for any consideration of summary judgment to be proper.  In order to prevail on its motion and establish the liability of Omega Flex in this case, Plaintiff must prove that the facts and issues actually determined in the <u>Tincher</u> case are <u>identical</u> to the facts and issues to be determined in this case.  Plaintiff's only evidence to support its position is the general verdict form rendered by the jury in the <u>Tincher</u> case, which did not make any specific findings of fact in that case, nor even determine that the product contained a "design defect."  Plaintiff has not met that heavy burden, and as a consequence Plaintiff's Summary Judgment Motion should be denied.

   B. <u>**The Products at Issue Are Not Identical**</u>

Plaintiff erroneously claims that the products at issue between this case and the <u>Tincher</u> case are identical; however, that is incorrect.  As the <u>Tincher</u> court itself stated: "[i]t has long been the law in Pennsylvania that a 'defective condition' includes the lack of adequate warning or instructions required for a product's safe use." (1925 Op. Aug. 5, 2011, at p. 19, Ex. "I") (citing <u>Thomas v. Arvon Products Co.</u>, 227 A.2d 897 (Pa. 1967); <u>Sherk v. Daisy-Heddon</u>, 450 A.2d 615, 618 (Pa. 1982) (plurality); <u>Mackowick v. Westinghouse Elec. Corp.</u>, 575 A.2d 100, 102 (Pa. 1991); <u>Jacobini v. V & O Press Co.</u>, 588 A.2d 476 (Pa. 1991).  The applicable D&I Guides are different between the Tincher TracPipe and the Shamsher TracPipe.  As set forth

14

above, the Tincher installation occurred in late 1998 or early 1999.  Thus, the 1998 D & I Guide applied to the Tincher installation, and was the evidence in front of the jury.  The Tincher jury never saw any other D&I Guides during the trial, and thus, did not pass judgment on the later TracPipe product system with the different Design and Installation Guide available for the Shamsher home's CSST installation.

Specifically, the Shamsher TracPipe installation occurred in 2006.  Thus, the December 2005 D&I Guide was part of the Shamshers' TracPipe.  This is a significant difference, because the 1998 D&I Guide was silent on the instructions to properly bond the TracPipe except to instruct installers to install the TracPipe in accordance with the applicable codes.  However, the December 2005 D&I Guide stated as follows:

> SECTION 4.10 – ELECTICAL BONDING/GROUNDING
>
> 1. The piping system is not to be used as a grounding conductor or electrode for an electrical system.  In accordance with the National Fuel Gas Code NFPA 54/ANSI Z223, "each above ground portion of a gas piping system upstream from the equipment shutoff valve shall be electrically continuous and bonded to any grounded electrode, as defined by the National Electrical Code, ANSI/NFP 90 1999 Edition."
>
> 2. For bonding of the TracPipe system, a bonding clamp must be attached to the brass AutoFlare fitting adapter (adjacent to the pipe thread area – see Figure 4-21) or to a black pipe component connected to an AutoFlare fitting.  The corrugated stainless steel portion of the gas piping system SHALL NOT be used as the bonding attachment point under any circumstances.  Bonding electrode conductor sizing shall be in accordance with Article 250 (Table 250-66) of ANSI/NFPA 70 1999 Edition.  The bonding is a requirement of the National Electrical Code.

(Ex. F, December 2005 D&I Guide at 60).  This language is followed by an illustration of proper bonding and a sizing chart.  (Ex. F).  This illustration and sizing chart is followed by definitions of "grounding", "bonding", and "equipotential bonding".  (Ex. F).

As the D&I Guides are part of this product, and Plaintiff's allegations here include claims of improper bonding, the different D&I Guides applicable to the Tincher TracPipe and the

15

Shamsher TracPipe require different facts relative to design defect which must be considered by the jury. Plaintiff is not entitled to collateral estoppel on their strict liability claim when the elements that make up the Tincher product and the Shamsher product are different and require different facts and proofs.

Finally, it should be noted that Plaintiff has not proved that the products themselves are identical, in that the TracPipe product comes in a variety of sizes that have some variation in their dimensions, and Plaintiff has not proven that the product in the Tincher case is identical to the product in this case.

### V. OMEGA FLEX HAS NEW EVIDENCE THAT WAS NOT PREVIOUSLY AVAILABLE AND WILL BE DENIED A FULL AND FAIR OPPORTUNITY TO LITIGATE IF PRECLUDED FROM LITIGATING THE ISSUE

Subsequent to the Tincher verdict, Omega Flex has investigated further areas of proof to support its defense that TracPipe is a safe, non-defective design. For instance, Omega Flex retained expert, Dr. Harri Kytomaa, who has conducted a series of tests which disprove certain aspects of the Tincher plaintiff's defect theory introduced during that trial. (See Dep. Transcript of Harri Kytomaa, Becnel v. Omega Flex, Inc., No. CJ-2007-5386-Kuehn (State of Oklahoma, Tulsa County), Vol. II, Nov. 1, 2011, at 186-90, Ex. J). The Shamsher jury should be permitted to consider this evidence on the issue of design defect, and also consider any other new evidence and witnesses on behalf of Omega Flex that were not part of the Tincher trial.

In Vincent v. Thomas, 50 A.D.2d 211 (N.Y.S. Ct. 1975), the appellate division reversed the trial court's grant of summary judgment against the drug manufacturer on the basis of collateral estoppel. The appellate division found numerous reasons why that was improper, including the fact that the manufacturer, since the first trial, found that since there was now a way to test the basis of the theory in the prior litigation. The court reasoned that:

> To allow the doctrine of collateral estoppel to be used to deny to a defendant in a case such as this an opportunity to introduce evidence clearly relevant to a key issue in the case, the absence or existence of a causal relationship between the claimed defect in the product produced by such defendant and used by plaintiffs, and the injuries for which the plaintiffs are suing, is the use of that doctrine to deny such a defendant a complete and fair opportunity to litigate the very issue upon which its rights depend.

Id. at 221.  Likewise, the new tests by Dr. Kytomaa constitute new evidence clearly relevant to a key issue in the case, and the application of collateral estoppel would deny Omega Flex a complete and fair opportunity to litigate the key issue of whether its product is defective—the very issue upon which its rights depend.

## CONCLUSION

Application of offensive collateral estoppel is inappropriate in this case, where the substantive law of the two states is vastly different, discovery is not complete, expert reports have not been exchanged, the products and underlying facts are different, and there is new evidence to rebut Plaintiff's theories that was not available in the Tincher trial.  For the reasons set forth herein, Defendant Omega Flex, Inc. respectfully requests that this Court deny Plaintiff's Motion for Summary Judgment.

/s/  David J. Quigg
Donald S. Meringer (Federal Bar #24408)
David J. Quigg (Federal Bar #26401)
MERINGER, ZOIS & QUIGG, LLC
320 North Charles Street
Baltimore, Maryland 21201
(443) 524-7978
(443) 524-7982 Fax

*Attorneys for Defendant Omega Flex, Inc.*

- and -

*/s/ Lynne M. O'Brien*
Lynne M. O'Brien (Admitted *Pro Hac Vice*)
Campbell, Campbell, Edwards & Conroy, P.C.
Chesterbrook Corporate Center
690 Lee Road, Suite 300
Wayne, PA  19087
(610) 964-1900

*Attorneys for Defendant, Omega Flex, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this **15th** day of December, 2011, a copy of the foregoing *Omega Flex Inc.'s Opposition to Plaintiff's Motion for Summary Judgment* was filed and served by electronic submission via CM/ECF, in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Maryland to all counsel of record.

*/s/ David J. Quigg*
David J. Quigg

**APPENDIX OF EXHIBITS TO OMEGA FLEX INC.'S OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**Ex. A:** <u>Nationwide Mutual v. Omega Flex</u> Order

**Ex. B:** Trial Transcript of Jury Verdict, Oct. 20, 2011, <u>Tincher v. Omega Flex</u>

**Ex. C:** Shamsher Complaint

**Ex. D:** Tincher Response to Omega Flex's Motion for Summary Judgment on Failure to Warn Claim

**Ex. E:** 1998 Design and Installation Guide

**Ex. F:** December 2005 Design and Installation Guide

**Ex. G:** Stier, *Another Jackpot (In) Justice: Verdict Variability and Issue Preclusion in Mass Torts,* 36 Pepp. L. Rev. 715 (April 2009)

**Ex. H:** Madden, *Issue Preclusion in Products Liability* (1990), Pace Law Faculty Publications, Paper 152

**Ex. I:** <u>Tincher</u> Opinion (1925 Op. Aug. 5, 2011)

**Ex. J:** Deposition Transcript of Harri Kytomaa, <u>Becnel v. Omega Flex, Inc.</u>, No. CJ-2007-5386-Kuehn (State of Oklahoma, Tulsa County), Vol. II, Nov. 1, 2011